Good afternoon, Illinois appellate court 1st district court is now in session. The 6th division, the honorable justice presiding case number 2, 3 dash 2, 3, 8, 6 people versus Lamar Stephens. No, not everyone. I'm just a surrogate chance can with me. You'll see my. This is Michael. I'm sorry and just a silly again. I just start out by pointing out that we've read the briefs, the cases, the record, so you don't have to spend a lot of time on the fact pattern. And it's always our suggestion to attorneys that you start with your high point and start with the thing that you think is the most compelling and then work your way down if you have time, but hit the high notes 1st. So, having said that, we'll start with the appellate. I, I'm not sure who's representing. Miss McFarland, are you representing? Yes, Mr. Lamar Stephens. Okay, your turn may it please the court and if the court would allow, I would like to reserve 2 minutes of my time for rebuttal. Thank you, the underlying issue presented in this case is that the trial court had a duty to conduct an adequate inquiry into the factual basis of Mr. Stephens post trial claim of ineffective assistance of counsel in a non adversarial proceeding. It did not do so, and this issue was not raised on direct appeal. Mr. Stephens raised it in a timely post a post conviction petition. He therefore asks that this court find his petition made a substantial showing that his appellate counsel was ineffective for failing to raise the inadequacy of his post trial crankle proceedings and to remand for further post conviction proceedings on his claim. Now, Mr. Stephens made the required substantial showing of appellate counsel's deficient performance and also prejudice. What is that? Well, let's start with what was it that wasn't presented to the court. I mean, he made a statement, he made a complete statement, right? Your client correct the court allowed Mr. Stephens to explain his claim and then after he. And what and what was that claim he actually had filed multiple written motions, including many claims. And when he spoke briefly, he said evidence of his mental state. Suggesting there was mental health evidence that perhaps wasn't investigated, wasn't presented. It's not entirely clear. And that is. Sort of the gist of our argument here is that it was the trial court's duty. To ascertain the factual nature within the judge say, isn't that is that it? Is that then he says, where is that effect? Is that is that it? Correct? Okay. So the answer was, yes. Correct yes. Okay. So we know what it was. And I, I'm trying to find out, you know, what is it that is missing here when we know that the psychiatrist. Said that he knew what he was doing. This is not insanity at all. You know, when you when you look at what was going on at that sensing hearing. And, and, you know, what, what, what, what is it that the judge didn't know. That he should have known where, where, where in your briefs, you say what the judge should have. Inquired about yes. So my answer to that, your honor is that we do not know the actual factual basis and the details. From this record, because the trial court didn't inquire. Well, where does it say the must ask a question? In fact, if it's harmless. Courts have said that it's not necessary, so it's not required to court to ask the question. Is that correct? Certainly there is no absolute requirement that the court ask a specific question or ask a question of a defendant or his trial counsel. However, our Supreme Court has acknowledged that usually. That is required, and in this case, we argue that was certainly required. Because the nature of the claims were not apparent from the record. They were not rebutted by the record and the factual. What would he mean by the claims? He said that had to do with his mental background. Right that had been gone into in depth by the psychiatrist. It's a sentencing, but I'm trying to figure out where is. What is missing here? I mean, the court didn't know. Yes, so our argument is that to the extent there are questions from the record. It was the trial court's duty and here the trial court's error. So what was missing? Mr. Stevens said. There were 12 mental hospitalizations that were presented. The council had evidence of when the expert testified at sentencing. He only referred to six or seven that raises the question. Is there additional information that Mr. Stevens was trying to argue to the trial court? Wasn't presented? Why would that matter? I mean, again, what was the whole purpose? Of this. Material. Are we talking about strategy here with regard to his? Mental state. I mean, it's a fact that he's not insane. Can't go there. So where are we going with this? So looking at the trial record, Defense Council was clear. They didn't seek an insanity defense. That was something the state was arguing against. Defense did not seek an insanity defense. But they did argue throughout trial that the mental state was the crux of their case. Mr. Stevens also in his pro se motions said there was no involuntary manslaughter. Now, their defense counsel didn't request an instruction on involuntary manslaughter. And Mr. Stevens petition or pro se motion could have been suggesting there was evidence to support that or evidence that wasn't presented. We don't know the details because it wasn't inquired. But we do know involuntary manslaughter, our Supreme Court has said, is a decision that rests with a defendant whether to request that instruction. No instruction was requested. So that is potentially an issue the court should have inquired. And here the court made no inquiry of trial counsel. It wasn't required in every single case to ask a question of trial counsel. But counsel was here. And these claims raised a question that perhaps counsel could have addressed. So stepping back again. Perhaps, but when you look, I mean, he had a history of choking when she was his wife. Right. And it had a history of protective orders. And in fact, the protective order had lapsed a week before the murder. And he admitted to the murder. There's a video that was shown admitting to the murder. Again, I'm trying to figure out where you're going with this, because it seems that the lawyer was making a call with regard to strategy with regard to how the case should be presented to the jury. Well, that is possible that this was trial strategy. Your Honor, our position is the trial court did not inquire, didn't get the factual basis of the claims on record. And we don't know. One case that we cited in the briefs, people versus wool, I cited in the reply, an unpublished case. But in that case, I think is helpful on this point, because there the court recognized that there could be other reasons whereas like here, the claims were getting at perhaps the advice of counsel. So perhaps the post-trial claim, if it's getting that advice that was or wasn't given, maybe that would impact some of the decisions that the defendant had made. So there it was, I believe, whether or not to accept a plea. So to the extent that we don't know the details of the factual basis of Mr. Stevens post-trial claim of ineffectiveness, that was the trial court's duty. And here, the argument that Mr. Stevens argued should have been raised on direct appeal is that the Krenkel inquiry was conducted improperly. And it was where the state was allowed to participate. That's conceded, that's conceded. But that's still the question that we are faced with is harmlessness of what happened. That's the issue. And that's what Jackson says. And we have to follow Jackson. So we'll say rule 23 order from appellate court. So again, I'm just considering that there isn't much we don't know about his mental state and that much of that came out in the sentencing. Again, what would the court have? No, the fact between six or 12 hospitalizations, that what's going to make the difference, that's prejudice? Well, the issue is that we don't know on record what this additional information was. There is suggestion that suggests that there was information and evidence that perhaps wasn't presented. And the trial court could have cleared this up with perhaps a question of defense counsel. Did counsel investigate? Was counsel aware? Was it strategy not to present? This is all speculation, though. And harmless error, to the extent that it gets to the underlying merits, is premature. Because here, the issue, Mr. Stevens has raised this in a post-conviction petition claiming ineffective assistance of appellate counsel. Now, the error, which your honor noted, has been conceded that the state participated adversarial at the preliminary inquiry. And also, Mr. Stevens argued, the court relied on its general knowledge of defense counsel, rather than specifically at this trial. That he had excellent attorneys, I believe, two of the best, the court said. So where there was a clear error- But the court, immediately after that, says the facts of the case are the facts of the case. And based on your own testimony, you convicted yourself in this case. So again, the court is going back to what was presented. And, you know, whether the fact- And he said, this was the whole of his Crankle statement was that, he said, he had information that I was in 12 different mental hospitals, and that I was on social security, based upon my mental disability. None of this was brought up in trial. And so that was an effect of it. And the court said, is that it? And he said, yes. So yes, the court was going back on the record to what the state has just argued. And that's the adversarial participation that it's agreed was error. So here, where this is ineffective assistance of appellate counsel, the error was clear. And the prejudice is that, had this error been raised on direct appeal, there's a reasonable probability this court would have remanded for a proper preliminary inquiry without- When you look at the decision, which I reread the decision from 2015, I, you know, looking at what the appellate counsel did and looking at what is here, I'm still trying to figure out why there's prejudice. You keep going back. Well, okay, their participation by the state should have been there. You're right. But it doesn't sound like the court took much notice of it. And they didn't say anything that wasn't in the record. But the court didn't even refer to it, what they said. And the fact that he, the court said that they were excellent lawyers and gave a good job, you know, that doesn't mean that the judge then says, yeah, obviously the facts of the case are the facts of the case. So in a word, then, as I understand your argument, your major argument is that the judge should have asked questions of the scope of what Stevens was trying to tell him. Is that it? Yes. And then also that the harmlessness analysis is premature here, because it can't be, we can't address the nature of the underlying claims without the inquiry into the factual basis. And again, the procedural posture here is different from Jackson and Jolly. This isn't a direct appeal on a, where the Krenkel inquiry was remanded. People versus Warren also cited in the briefs is the same procedural posture, where it was a second stage post-conviction petition claiming ineffective assistance of appellate counsel for not raising a Krenkel issue of a similar error. And there, this court reversed and remanded because the Krenkel issue was apparent from the record as here, and there was a reasonable probability if that had been raised on direct appeal, then it would have been remanded for proper preliminary Krenkel inquiry. So here where it's an issue of appellate counsel's performance, the evidentiary hearing should be on appellate counsel's failure to raise this claim. And if I may address Jackson, Your Honor, that doesn't cut against our argument because in Jackson, yes, the court said that harmlessness can be addressed. And that was a case on direct appeal after repeated remands. But there the court noted in finding that case, harmless error, that the court had conducted on Krenkel remand of full inquiry, well, preliminary inquiry, but inquired of the defendant and of trial counsel and found the claims pertained to strategy. So once the state participated in an adversarial manner, the court said that didn't change the result. It was trial strategy, and the court would have found the same. In this case, it's not in the same procedural posture. And also, we don't have any inquiry whatsoever of trial counsel. We can't know the full nature of these pro se post trial claims just based on the record. Well, no, but he said the 12 hospitalizations, isn't that this talking about the diminished capacity by another name? Well, that is what the state argued. So the state's argument was allowed to frame the issue. Defense counsel during trial was clear and repeatedly said, no, that wasn't their strategy or their argument. So again, to the extent that this raises questions, the court did not ask trial counsel or Mr. Stevens if that was what they were getting at. It simply allowed the state to argue and then denied the motion. And some of the claims that may be rebutted by the record in its briefs, the state cited people versus Scalia, which I think the court also addressed in Jackson. And there they were claims that could be verified on record. The defendant made a claim that he wasn't admonished about potential sentences or probation, and the court recalled that it had admonished the defendant of the sentences. So that was rebutted by the record. But the claims here are not similar. They're not claims that were rebutted by the record. They're claims about whether this mental health information should have been investigated,  We don't know without some inquiry the factual basis of the claims. And then, as I mentioned, the involuntary manslaughter instruction. Again, there was no discussion of that at trial. There is in the state's motion to dismiss the post-conviction petition at the second stage. It appears to misstate because it says there was an argument in the post-trial motion involving involuntary manslaughter. But it wasn't in counsel's motion. It was only in Mr. Stevens. And the court did not address post-trial why this instruction hadn't been offered or whether it would have been given if it had been offered. So again, that's not clear on the record. But again, how do you get to the prejudice? So again, the prejudice here, because it's ineffective assistance of appellate counsel, is that this issue was clear from the record and would likely have led to remand. Why would it likely lead? I mean, considering the record, considering his admission that he killed her, considering the expert report and the rulings with regard to that, why would it be any different? The record shows that the Krenkel preliminary inquiry was conducted improperly. That's not the issue I'm asking about. It's the prejudice. Let's assume you have to show both. Where's the prejudice? Yes, certainly. And so the harmlessness, again, as far as it gets to the merits, it can't be fully addressed. So it's premature to fully address the merits of the claims without any inquiry from the trial court into the claims. So you want us to rule that a judge must ask questions? No, certainly not in every case. But where there is some question and the factual basis has not been ascertained. Our Supreme Court has said, what is it? Again, the factual basis was ascertained. The judge said, is this it? And he said, yes. So there has been ascertained. Why wouldn't we take the defendant at his word? Well, the court didn't ascertain, again, why these things weren't presented. Mr. Stevens said, this evidence didn't come in. I wanted this to come in. There wasn't an instruction given. But the court didn't inquire of counsel. So without some inquiry, the court didn't make a finding that this was trial strategy, didn't get into those claims from counsel. So that is our position. That here, if the court had conducted some inquiry of counsel, in addition to Mr. Stevens, then it could have addressed the claims and made the necessary record. And that is why Mr. Stevens asked this court to find that he made a substantial showing, again, of appellate counsel's ineffectiveness and to remand for further post-conviction proceedings. Unless there are further questions, I deserve the remainder of my time for rebuttal. Justice Gamorath? No. Okay. Ms. Buccaro? Good afternoon, Your Honors. May it please the court. My name is Susanna Buccaro, and I represent the people on this matter. In response to the court's inquiry regarding the most compelling argument for the people, it was highlighted by Justice Hyman's questions that the defendant has failed to make a substantial showing that he has incurred any prejudice as a result of his counsel not raising this claim, where there is no reasonable probability that this court would have remanded for an initial Krankel hearing based on this record, these facts, and the law. Even if this court were to remand for an evidentiary hearing at this point, a third-stage evidentiary hearing, and appellate counsel were called to testify, even if appellate counsel conceded that he should have raised this claim in 2015, there's no evidence to present to establish prejudice. It's simply a matter of law that this court is capable of deciding right now whether the defendant incurred any prejudice from the results of his counsel's failure to bring this claim. It's clear that he did not, because there's no reasonable probability in 2015 that this court would have found that the Krankel inquiry was inadequate. And if you look at the law at that time, in 2014 is when this defendant filed his appeal. There was a circuit split in 2014, which gets addressed by the Illinois Supreme Court in Jolly. The Illinois Supreme Court in Jolly recognized a certain split between the second district and the fourth district regarding the state's adversarial participation at a Krankel hearing. The second district found that it could never be harmless error. And the fourth district, which was Jolly, found that it could be harmless error. When the Illinois Supreme Court addressed it in 2014, the Illinois Supreme Court did not foreclose the possibility that adversarial participation by the state could be harmless error. And the important distinction between Jolly and this case is that this case, the state's participation was uninvited, did not present any evidence, did not question witnesses, was not adversarial in the egregious way that the state's involvement in Jolly was, and that ultimately when the Illinois Supreme Court was presented with a fact pattern that was similar to this case, it decided that it's harmless error. And that would be Jackson. So if this were- But isn't it kind of hindsight speculation on our part now? Because we really don't know. Counsel's argument is we really don't know what the contours are of the complaint about counsel's actions because the judge never asked any questions except one. Is that it? That was the only question the judge asked. So there is an open issue as to really what happened here and what this is all about. And certain questions should have been asked. Otherwise, we're just speculating what would be the harm of having a hearing on a third stage. I respectfully disagree, Your Honor. And I can look at, go through each claim and explain how despite my opposing counsel's arguments, each claim was clearly rebutted by the record. So the first claim is that in his pro se motion was that defendant argued that his counsel was ineffective for failing to argue his state of mind. Defendant also presented a four-page written motion that was single-spaced that the trial court did consider and indicate that it had read. And then as Your Honor pointed out, it gave him an opportunity to explain his claims and specifically asked him when he was done, is that it? And he affirmed yes. With regard to the state of mind claim, the record is replete with examples of how often defense counsel at trial brought up the defendant's state of mind in opening statement on cross-examination. In closing argument, the defense argued the defendant's state of mind. The word state of mind or mind comes up eight times during the defense's argument. So it was very clear to this trial court, because this trial court had presided over the proceedings, that the defendant's state of mind was argued. And therefore, that claim was rebutted by the record. Turning to the next claim, defense counsel failed to present evidence of defendant's mental health. Again, rebutted by the record. Dr. Leska testified over 50 pages of transcript about the defendant's mental health. Clearly, there was no possible neglect of the case where counsel had diligently investigated defendant's mental health, hired an expert, an expert who performed a battery of psychological tests, an expert whose report relied upon a multitude of hospitalization records to reply to counsel's representations that there were more hospitalizations that the court should have considered. The record reveals that there were multiple institutions, six or seven institutions that Dr. Leska considered. That's not the same as hospitalizations. Defendant could have been hospitalized at the same institution more than once. So despite the fact that Dr. Leska's report indicates that it reviewed the records from a number of hospitals, that could have included and probably did include all 12 hospitalizations. Furthermore, with regard to defendant's presentation to the court that the court did not consider that he was receiving disability for his impairments, Dr. Leska presented at length her professional opinion about defendant's impairments. Thus, whether or not he was receiving benefits from the government would not have been evidence that would have weighed towards developing, delving further into by the court. The court knew at that time what evidence there was about defendant's mental health and defendant did not, defendant replied to, is that it? Yes. Defendant did not offer anything in additional beyond what the court already knew that it should look further into. Furthermore, with regard to defendant's mental health, as your honor, as Justice Hyman pointed out, an insanity defense was precluded by Dr. Leska's analysis and assessment that defendant understood the criminality of his conduct at the time that he strangled the victim. Therefore, there was no other reason or no other legal basis that defense counsel could have presented evidence of defendant's mental health. Hewlett at that time precluded any effort by defense counsel to negate a mens rea based on a defendant's mental health records. It was reasonable for counsel not to try to do that. And the trial court would have known that, defense counsel would have known that, appellate counsel would have known that. Turning to the last prank or claim raised by the defendant. But should the judge at least raise that as a question or an issue to counsel who's at the time to the defense attorney? In this case, your honor, it was not required. As my opposing counsel pointed out that there, at times there will need to be questions of counsel. That's when the questions of counsel are for matters outside of the record. When a counsel advises defendant not to take a plea, when counsel advises defendant, you should take a bench instead of a jury. Those things would have happened outside the presence of the trial court. That's not so here. Here, the trial court understood why if the defense had sought to introduce mental health evidence for any other reason than an insanity defense, the trial court, as the gatekeeper of the evidence, knew that it would have denied the admission of that evidence. It had everything it needed to know. Turning to the third crankle claim that defendant raised, he argued that his trial counsel was ineffective for failing to request an instruction for involuntary manslaughter as well as voluntary manslaughter. The voluntary manslaughter argument is rebutted by the record because counsel did request a second degree murder instruction under both grounds for provocation and for mutual combat, and the trial court rejected it on both grounds. So that's clearly rebutted by the record. With regard to the involuntary manslaughter instruction, the facts of this case do not warrant an involuntary manslaughter instruction. And counsel knew that and the trial court knew that. What about the fact he testified, defendant testified, I snapped? Yes, yes, your honor. Snapping is not a basis for getting a reckless, for getting an instruction on the state of mind and recklessness. For example, in People v. Leach, this court in 2010 and this trial occurred in 2012. So trial counsel would have been aware of People v. Leach. In People v. Leach, the defendant says the same facts as here. Defendant strangles his wife and the medical examiner in Leach, like the medical examiner in this case, testified that after 30 seconds, a person loses consciousness. And then in order to kill them by strangulation, you have to continue exerting pressure on the unconscious person for an additional two minutes and 30 seconds. And the court held in Leach in 2010 that holding someone a limp body, exerting force, precluding air from entering, shows evinces the intent to kill and not the evidence of recklessness needed for involuntary manslaughter. And that opinion was affirmed and that reasoning was affirmed by the Illinois Supreme Court in 2012, November of 2012, which would have been three months before the trial court heard this pro se allegation in March of 2013. So the court would have known six months ago, the Illinois Supreme Court said that these exact facts do not support, do not sustain a conviction for involuntary manslaughter, that this is first degree murder. And the trial court acted accordingly and dismissed the claim. In addition, counsel refers to people versus Wolf and people versus Warren. However, both of those cases are distinguishable where they involved the state and Warren presented evidence of a 911 query. Here, we don't have the state presenting any evidence. The state is merely commenting, making statements, not questioning witnesses. And then with regard to Wolf, in that case, what's particularly important is that the trial court in that case was assigned to review the pro se crinkle motion merely three months before. So they were not, no, I'm sorry. The court found that the trial court was not intimately familiar with the case, like the trial court in this case would have been since it presided over the matter since arraignment. And thus it was well aware of all of the facts and why looking at this, the trial court did what the trial court is supposed to do, which is to see on their face that these claims were meritless and dismiss them. For these reasons, Your Honor, and for the reasons stated in our brief, the people respectfully request that this court affirm the decision of the trial court and dismiss, dismissing the second stage petition. Any questions? Justice Hyman, Justice Cameron, thank you very much, Ms. Ficarro. Ms. McFerrin, two minutes to rebuttal. Thank you. That'll be brief. The pro se petition was not to be determined on the merits. It need only bring the claim to the trial court's attention. And so counsel is arguing the ultimate merits of whether or not involuntary manslaughter would have been found in this case, citing People v. Leach, which I don't believe is cited in the briefs. In that case, the issue was whether or not the state had proven first-degree murder beyond a reasonable doubt or whether it was involuntary manslaughter, I believe. So here, there was no instruction given or even sought. So that's a different issue. And of course, that is an issue for the trier of fact. So the jury here wasn't presented with the option of involuntary manslaughter. And that is a decision that rests with the defendant, whether or not to submit a lesser included to the jury. So Leach, although perhaps some factual similarities, in that case, the issue had been presented to the jury and the jury decided. And then on appeal, it was being addressed as reasonable doubt, not whether or not instructions could even have been given. So that was a decision. It is cited in the brief. But in that case, it found that strangulation for the length of time, which was here, is not recklessness. So that's been determined. And I think that was the point counsel was making. So having known that, the appellate counsel would be wasting his time to bring that issue up. I mean, it's a harmless situation and it wouldn't have gone anywhere. I believe that the distinction is that that case was considering after it had been presented to the trier of fact. So that is the distinction that there it was presented to the trier of fact. And here it was not presented. And we don't know why it wasn't presented. So then the other point that I would make is to the extent, I think we agree if the pro se claims are getting at advice of counsel or something off the record, then there should have been some question of trial counsel to ascertain the basis. And that was the case here. And so for those reasons, the crankled proceedings were insufficient. It was apparent from the record. And if that had been raised on direct appeal, this court perhaps would have remanded. Again, there's no evidence. One of the indicia of recklessness would have been if in a case where someone went and tried to get help when he saw that the person he was choking was having troubles. Here he stole the keys and cars and went to the police. So very different situation. He did nothing. I mean, he saw her tongue out and left. And for several minutes he had to, based on the testimony of trial, he was strangling her, which was something he had done several times before. And why he probably had a protective order as well. So again, I mean, I'm just asking, I guess that really goes to the harmlessness. So certainly, again, Your Honor, the point that we are making is simply that these are not, it's premature to get into the actual merits here, because there were questions potentially of trial counsel's performance that were not ascertained. And had the court asked some question of counsel, additional question of Mr. Stevens, it could have addressed what those claims were, ascertain the factual basis as the court was required to do and made the necessary record in this case. Thank you. Questions? No. Okay. Ms. McPheron, Ms. Bacara, thank you very much for your excellent briefs and your excellent oral arguments in this case. We've heard all of everything you're saying. We've asked questions. We've read the record. We've read the briefs and we'll take this case under advisement. For this case, court is now adjourned. Thank you.